■ EDWARD BOTWINICK, Appellant-Respondent, v DUCK CORPORATION et al., Respondents-Appellants. [700 NYS2d 143] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered December 24, 1998, which, after a nonjury trial, awarded plaintiff damages in the amount of $60,000, plus interest from October 18, 1993, and which brings up for review prejudgment orders, same court and Justice, entered respectively on or about July 16, 1998 and December 4, 1998, which, *inter alia*, limited plaintiff's recovery to $60,000 and found that neither plaintiff nor defendants were entitled to recover attorney's fees, unanimously modified, on the law, to award defendant The Duck Corporation recovery of its reasonable attorney's fees in this action, the action remanded for further proceedings to determine the amount of such attorney's fees and for entry of an amended judgment in accordance therewith, and otherwise affirmed, with costs to defendant Duck payable by plaintiff. Appeals and cross appeal from said prejudgment orders unanimously dismissed, without costs, as subsumed in the appeal from the judgment. Cross appeal taken by the individual defendants unanimously dismissed, without costs, by reason of the individual defendants' lack of standing to pursue the points raised on such cross appeal.

Plaintiff was engaged by defendant The Duck Corporation in July 1993 to assist in attracting investment to finance Duck, which was then a recently established corporation owning certain digital data compression computer technology. The parties' agreement, dated July 20, 1993, provided, *inter alia*, that plaintiff would receive 7.5% of Duck's shares, 20% of which would vest in plaintiff upon the signing of the agreement, and an additional 20% of which would vest in plaintiff at the end of each of the four 3 month periods immediately following. The agreement further provided that, if Duck chose to terminate the engagement within the first year thereof, "it shall only do

so for good cause and if said good cause can be clearly demonstrated, [plaintiff] shall be entitled to retain that portion of the 7.5% ownership share which already vested." Duck terminated the agreement on October 18, 1993, by which date plaintiff had a vested right to only 1.5% of Duck's shares.

We affirm the findings of the trial court that Duck had "good cause" to terminate plaintiff's engagement, and that his right of recovery was therefore limited to the value of his vested 1.5% ownership interest in Duck as of the date of the termination, since the evidence establishes that plaintiff breached his duty of loyalty to Duck as its employee and agent (*see, e.g., Bon Temps Agency v Greenfield*, 184 AD2d 280, 281, *lv dismissed* 81 NY2d 759). Plaintiff assumed an adversarial stance with respect to Duck when he notified it that he had obtained an investment proposal from a venture capital firm (Oak Hall) but wished to withhold the proposal from Duck until Oak Hall had a chance to present the proposal itself; the proposal designated plaintiff to hold the balance of power between representatives of Duck's founders and representatives of Oak Hall on Duck's board and executive committee, giving rise to a clear inference that plaintiff had led Oak Hall to view him as a potential ally against Duck's founders in any future control conflicts. The inference of disloyalty is strengthened by plaintiff's apparent failure in this action to produce all correspondence between himself and Oak Hall. In addition, certain correspondence from plaintiff to a third party dated shortly before his termination reveals that plaintiff himself was by then looking for a way to extricate himself from his relationship with Duck.

We affirm the trial court's valuation of Duck as of the date of the termination, based on plaintiff's own $4 million valuation of Duck in a proposal he made to the company in August 1993 to make an investment in it, as constituting a fair interpretation of the evidence (*Thoreson v Penthouse Intl.*, 80 NY2d 490, 495). The court's exclusion of the testimony of plaintiff's retained valuation expert, based on what we view as plaintiff's willful failure to retain such expert and to give notice of his expected testimony pursuant to CPLR 3101 (d) until almost the eve of trial, was a proper exercise of discretion. The court's denial of plaintiff's motion to amend his complaint to add a cause of action for specific performance of Duck's obligation under the agreement to issue stock to him affords no grounds for disturbing the judgment, since plaintiff's breach of his duty of loyalty renders such an equitable remedy unavailable to him (*see, Currier v First Transcapital Corp.*, 190 AD2d 507, 508; *Hadcock Motors v Metzger*, 92 AD2d 1, 4, 7; *Panner Woodwork-*

*ing Co. v Adair*, 75 AD2d 553, 554). We have considered and rejected the parties' other arguments for affirmative appellate relief, except for the portion of Duck's cross appeal challenging the trial court's denial of its claim for attorney's fees, to which the parties' agreement entitles "the prevailing party" in any litigation. Although Duck did not prevail in all of its contentions, we believe that it is the prevailing party in this action, considering the true scope of the dispute litigated, and comparing what each party achieved within that scope (*Excelsior 57th Corp. v Winters*, 227 AD2d 146, 147). Concur—Ellerin, P. J., Wallach, Lerner, Andrias and Saxe, JJ.