[899 NE2d 920, 870 NYS2d 814]

EPISCOPAL DIOCESE OF ROCHESTER et al., Respondents, v DAVID HARNISH, Former Rector of All Saints Protestant Episcopal Church, et al., Appellants, et al., Defendants.

In the Matter of ALL SAINTS ANGLICAN CHURCH, Formerly Known as ALL SAINTS PROTESTANT EPISCOPAL CHURCH, Appellant, v EPISCOPAL DIOCESE OF ROCHESTER et al., Respondents.

Argued September 9, 2008; decided October 23, 2008

## POINTS OF COUNSEL

*Eugene Van Voorhis,* Rochester, and *Adam Clark* for appellants in the first and second above-entitled matters. I. Plaintiffs-

respondents in action No. 1 and respondent-respondent in action No. 2 did not make a showing of sufficient admissible, undisputed evidence as a matter of law to warrant summary judgment declaring that an express or implied trust in All Saints Protestant Episcopal Church's property was ever created in favor of the Episcopal Diocese of Rochester and/or the Protestant Episcopal Church in the United States of America. (*JMD Holding Corp. v Congress Fin. Corp.,* 4 NY3d 373; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851; *Zuckerman v City of New York,* 49 NY2d 557; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Matter of Redemption Church of Christ of Apostolic Faith v Williams,* 84 AD2d 648; *Greenberg v Manlon Realty,* 43 AD2d 968; *Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439; *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282; *Jones v Wolf,* 443 US 595; *Watson v Jones,* 13 Wall [80 US] 679.) II. Under neutral principles of law All Saints Protestant Episcopal Church (All Saints) does not hold its property in trust for the Episcopal Diocese of Rochester or for Protestant Episcopal Church in the United States of America (ECUSA), and mere passage of Protestant Episcopal Church in the United States of America canons I.7.4 and I.7.5 (Dennis Canon) could not create a trust in All Saints' property under New York law, nor did the Dennis Canon codify existing ECUSA polity. (*Board of Mgrs. of Diocesan Missionary & Church Extension Socy. of Prot. Episcopal Church in Diocese of N.Y. v Church of Holy Comforter,* 164 Misc 2d 661, 212 AD2d 657; *Presbytery of Hudson Riv. of Presbyt. Church [U.S.A.] v Trustees of First Presbyt. Church & Congregation of Ridgeberry,* 13 Misc 3d 707; *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282.) III. Expulsion of All Saints Protestant Episcopal Church (All Saints) from the Episcopal Diocese of Rochester (Diocese) could not trigger a forfeiture of All Saints' property to the Diocese under neutral principles of New York law. (*Westminster Presbyt. Church of W. Twenty-Third St. v Trustees of Presbytery of N.Y.,* 211 NY 214; *Ludlow v Rector, Church Wardens & Vestrymen of St. John's Church,* 68 Misc 400, 144 App Div 207, 207 NY 689; *Matter of Venigalla v Alagappan,* 307 AD2d 1041; *Watson v Christie,* 288 AD2d 29; *Natoli v Milazzo,* 9 Misc 3d 1116[A], 2005 NY Slip Op 51570[U], 35 AD3d 823; *Rector, Churchwardens & Vestrymen of Church of Holy Trinity v Melish,* 4 AD2d 256.) IV. It was error on the part of the trial court to predicate its decision of the effect of article 3 of the Religious Corporations Law on the relationship of All Saints Protestant Episcopal

Church to the Episcopal Diocese of Rochester and Protestant Episcopal Church in the United States of America, especially since serious questions have been raised in the courts below by appellants as to the constitutionality of parts or all of the Religious Corporations Law under the Establishment Clause of the First Amendment to the Constitution of the United States and under the Preference Clause of article I, § 3 of the New York State Constitution. (*Cantwell v Connecticut,* 310 US 296; *Lemon v Kurtzman,* 403 US 602; *McCreary County v American Civil Liberties Union of Ky.,* 545 US 844; *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos,* 483 US 327; *Larson v Valente,* 456 US 228, 457 US 1111; *Storm v Town of Woodstock, N.Y.,* 32 F Supp 2d 520; *United States v Lee,* 455 US 252; *Morris v Scribner,* 69 NY2d 418; *Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 US 440; *Trustees of Presbytery of N.Y. v Westminister Presbyt. Church of W. Twenty-Third St.,* 222 NY 305.) V. In resolving the difference between the decisions in the Third and Fourth Departments of the Appellate Division in *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville* (250 AD2d 282 [3d Dept 1999]) and in the present case on the one hand and the decision of the Appellate Division, Second Department in *Board of Mgrs. of Diocesan Missionary & Church Extension Socy. of Prot. Episcopal Church in Diocese of N.Y. v Church of Holy Comforter* (164 Misc 2d 661 [Sup Ct, Dutchess County 1993], *affd* 212 AD2d 657 [2d Dept 1995]) on the other, it is respectfully submitted that the ruling in the latter case should be deemed the correct statement of New York law under neutral principles of law. (*Jones v Wolf,* 443 US 595.)

*Harter Secrest & Emery LLP,* Rochester (*Thomas G. Smith* and *Carol L. O'Keefe* of counsel), for respondents in the first and second above-entitled matters. I. Under neutral principles of law analysis, All Saints Protestant Episcopal Church held its property in trust for the Episcopal Diocese of Rochester and the Protestant Episcopal Church in the United States of America. (*Jones v Wolf,* 443 US 595; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110, 469 US 1037; *North Cent. N.Y. Annual Conference v Felker,* 28 AD3d 1130; *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282; *Board of Mgrs. of Diocesan Missionary & Church Extension Socy. of Prot. Episcopal Church in Diocese of N.Y. v Church of Holy Comforter,* 164 Misc 2d 661; *Maryland & Virginia Eldership of Churches of God v Church of God at Sharpsburg, Inc.,* 396 US 367; *North Cent. N.Y. Annual*

*Conference v Felker,* 28 AD3d 1130; *Presbytery of Hudson Riv. of Presbyt. Church [U.S.A.] v Trustees of First Presbyt. Church & Congregation of Ridgeberry,* 13 Misc 3d 707; *Noel v L & M Holding Corp.,* 35 AD3d 681; *Anderson v Livonia, Avon & Lakeville R.R. Corp.,* 300 AD2d 1134.) II. No justiciable controversy exists regarding the constitutionality of the Religious Corporations Law. (*New York Pub. Interest Research Group v Carey,* 42 NY2d 527; *Islamic Ctr. of Harrison, Pa. v Islamic Science Found.,* 216 AD2d 357; *Watson v Jones,* 13 Wall [80 US] 679; *Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 US 440; *Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich,* 426 US 696; *Jones v Wolf,* 443 US 595; *Dixon v Edwards,* 290 F3d 699; *Tomic v Catholic Diocese of Peoria,* 442 F3d 1036; *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282; *Upstate N.Y. Synod of Evangelical Lutheran Church in Am. v Christ Evangelical Lutheran Church of Buffalo,* 185 AD2d 693.) III. The applicable provisions of the Religious Corporations Law do not violate the national church canons and constitution. (*People v Pagnotta,* 25 NY2d 333; *Matter of Van Berkel v Power,* 16 NY2d 37; *Lemon v Kurtzman,* 403 US 602; *Rector, Churchwardens & Vestrymen of Church of Holy Trinity v Melish,* 4 AD2d 256, 3 NY2d 476; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America,* 344 US 94; *Watson v Jones,* 13 Wall [80 US] 679; *Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich,* 426 US 696; *Jones v Wolf,* 443 US 595; *Maryland & Virginia Eldership of Churches of God v Church of God at Sharpsburg, Inc.,* 396 US 367.)

*Goodwin Procter LLP,* Washington, DC (*Heather H. Anderson, Adam M. Chud* and *Soyong Cho* of counsel), for Episcopal Church, amicus curiae in the first and second above-entitled matters. I. The First Amendment prohibits governmental interference in the internal governance of churches. (*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos,* 483 US 327; *Watson v Jones,* 13 Wall [80 US] 679; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America,* 344 US 94; *Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 US 440; *Maryland & Virginia Eldership of Churches of God v Church of God at Sharpsburg, Inc.,* 396 US 367; *Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich,* 426 US 696; *Jones v Wolf,* 443 US 595; *Avitzur v Avitzur,* 58 NY2d 108; *Park Slope Jewish Ctr. v Congregation*

*B'nai Jacob,* 90 NY2d 517.) II. The lower courts properly applied neutral principles of law analysis in this case. (*First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110; *Jones v Wolf,* 13 Wall [80 US] 679; *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282; *North Cent. N.Y. Annual Conference v Felker,* 28 AD3d 1130.) III. The result dictated by New York precedent and reached by the lower courts in this case is consistent with authority from around the country. IV. All Saints Protestant Episcopal Church is bound by the Protestant Episcopal Church in the United States of America's express trust canon adopted in 1979. (*Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville,* 250 AD2d 282; *Polin v Kaplan,* 257 NY 277; *Havens v King,* 221 App Div 475, *affd sub nom. Havens v Dodge,* 250 NY 617; *Jones v Wolf,* 443 US 595.) V. The lower court's decision is consistent with other applicable principles of New York law. (*Polin v Kaplan,* 257 NY 277; *Havens v King,* 221 App Div 475, *affd sub nom. Havens v Dodge,* 250 NY 617; *Burt v Oneida Community,* 137 NY 346; *Temple Beth AM v Tanenbaum,* 6 Misc 3d 373; *Watson v Jones,* 13 Wall [80 US] 679; *Lefkowitz v Cornell Univ.,* 35 AD2d 166, 28 NY2d 876; *Conklin v State of New York,* 284 App Div 193; *Saint Joseph's Hosp. v Bennett,* 281 NY 115.) VI. Appellants have not presented a justiciable controversy for ruling on the constitutionality of New York's Religious Corporations Law. (*New York Pub. Interest Research Group v Carey,* 42 NY2d 527; *Ashcroft v Mattis,* 431 US 171; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110.)

*Jacobowitz and Gubits, LLP,* Walden (*Donald G. Nichol* of counsel), for Presbyterians for Constitutional Action, amicus curiae in the first and second above-entitled matters. I. Since the quitclaim from the Episcopal Diocese of Rochester to All Saints Protestant Episcopal Church is unambiguous, neutral principles of law must enforce the deed. (*Loch Sheldrake Assoc. v Evans,* 306 NY 297; *Uihlein v Matthews,* 172 NY 154; *Jones v Wolf,* 443 US 595; *Watson v Jones,* 13 Wall [80 US] 679; *Matter of Piel,* 10 NY3d 163; *Mercury Bay Boating Club v San Diego Yacht Club,* 76 NY2d 256; *Matter of Cord,* 58 NY2d 539; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110.) II. The Episcopal Diocese of Rochester has failed to prove a trust beyond a reasonable doubt. (*Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc. v Congregation Yetev Lev D'Satmar, Inc.,* 9 NY3d 297; *Beaver v Beaver,* 117 NY 421; *Jones v Wolf,* 443 US 595.) III. The Episcopal constitu-

tion may not be enforced. IV. The Religious Corporations Law is unconstitutional. (*Grumet v Pataki,* 93 NY2d 677; *Petty v Tooker,* 21 NY 267.)

*Raymond J. Dague, PLLC,* Syracuse (*Raymond J. Dague* of counsel), for Church of the Good Shepherd, amicus curiae in the first and second above-entitled matters. I. The *Jones v Wolf* (443 US 595 [1979]) "neutral principles of law" standard does not allow civil enforcement of church canons in derogation of state property and trust law. (*First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110; *Watson v Jones,* 13 Wall [80 US] 679.) II. Protestant Episcopal Church in the United States of America's (ECUSA) own official commentaries on the ECUSA constitution and canons recognize the ECUSA property canons are not civilly enforceable. (*Jones v Wolf,* 443 US 595.) III. Protestant Episcopal Church in the United States of America canons I.7.4 and II.6.4 were never properly adopted. (*Jones v Wolf,* 443 US 595.)

## OPINION OF THE COURT

JONES, J.

The question before this Court is whether defendant All Saints Protestant Episcopal Church (All Saints, or the parish) held its real and personal property in trust for the benefit of plaintiff Episcopal Diocese of Rochester (Rochester Diocese) and nonparty Protestant Episcopal Church in the United States of America (National Church), such that upon the parish's separation from the Rochester Diocese its property reverted back to the Rochester Diocese or the National Church. For the reasons stated below, we answer this question in the affirmative.

## Background

The National Church was founded in the late 1700s and is a member of the Anglican Communion, a group of churches rooted in the doctrine, discipline and worship of the Church of England's Book of Common Prayer. The National Church has a hierarchical form of governance. Its governing body, the General Convention, adopted—and periodically amends—a constitution and canons (the National Canons) that manifest its doctrinal law.

The Rochester Diocese is incorporated under article 3 of the Religious Corporations Law, which solely governs Protestant

Episcopal parishes or churches.[1] As a member of the National Church, the Diocese is governed by annual Conventions or Councils and, in addition to the National Canons, has adopted its own Diocesan Canons (the Rochester Canons).

All Saints was originally organized in 1927 as a mission under the ecclesiastical canons of the National Church and the Episcopal Diocese of Western New York.[2] Later that year All Saints incorporated under article 3 of the Religious Corporations Law. In 1947, All Saints applied to the Rochester Diocese to be recognized as a parish in spiritual union with the Diocese. To this end, All Saints signed a document agreeing "to abide by and conform to the constitution and Canons in force in the Episcopal Diocese of Rochester and to conform to all the canonical and legal enactments thereof." The Bishop of the Diocese approved this union, and All Saints thereafter became a parish.

## Facts and Procedural History

Due to serious theological disputes between the Rochester Diocese and the vestry (the leadership) of All Saints, in November 2005, the governing body of the Rochester Diocese—the Diocesan Convention—approved a resolution declaring the parish ecclesiastically "extinct."[3] The Convention also resolved that All Saints' real property and tangible and intangible assets were to be "transferred to the trustees of the [Rochester Diocese]."[4] All Saints, however, maintained that it held legal title to the real and personal property and, as it held the property free and clear under New York property law, neither the Rochester Diocese nor the National Church had claim to the property.

Plaintiffs commenced the instant declaratory judgment action seeking, among other relief, (1) a judgment that the real and personal property of All Saints was impressed with a trust in

---

1. Its predecessor was the Episcopal Diocese of Western New York.

2. A more detailed description of the history of and property relating to All Saints (e.g., the deeds) can be found in *Episcopal Diocese of Rochester v Harnish* (17 Misc 3d 1105[A], 2006 NY Slip Op 52600[U] [Sup Ct, Monroe County, Sept. 13, 2006]).

3. The parties acknowledge that the resolution was a purely ecclesiastical determination.

4. Subsequently, All Saints sought ecclesiastical oversight by other bodies within the Anglican Communion and All Saints notified plaintiff Rt. Reverend Jack M. McKelvey (Bishop of the Rochester Diocese), by letter, that it was now under the ecclesiastical authority of Archbishop Henry Orombi, Archbishop of the Church of the Province of Uganda. It also sought to amend its certificate of incorporation to change its name from All Saints Protestant Episcopal Church to "All Saints Anglican Church."

favor of the Rochester Diocese and National Church, (2) an injunction barring All Saints from interfering with the Rochester Diocese's ownership and use of the property and (3) an accounting. Defendants counterclaimed, seeking to (1) quiet title to the property, (2) declare certain provisions of the Religious Corporations Law null and void under the Establishment Clause of First Amendment of the United States Constitution and (3) enjoin the Rochester Diocese from trespassing and interfering in All Saints. Further, All Saints brought a CPLR article 78 proceeding against the Rochester Diocese, seeking to annul the determination declaring the parish extinct. All Saints argued that the Rochester Diocese abused its discretion and failed to follow its own rules and New York law when it declared All Saints extinct.

Relying on *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville* (250 AD2d 282 [3d Dept 1999]), Supreme Court granted summary judgment to plaintiffs, declaring that All Saints held all the real and personal property of the local parish for the benefit of the Rochester Diocese and National Church and dismissing defendants' counterclaims. The Appellate Division affirmed "for reasons stated in the decision at Supreme Court" and also affirmed Supreme Court's dismissal of the article 78 petition since the Rochester Diocese's decision to dissolve the parish was a purely ecclesiastical determination and not reviewable by the Court (43 AD3d 1406 [2007]). We granted defendants leave to appeal (9 NY3d 1027 [2008]) and now affirm.

## Discussion

Plaintiffs argue that there has been both an express and implied trust in favor of the Rochester Diocese and the National Church since All Saints' incorporation pursuant to article 3 of the Religious Corporations Law. Specifically, plaintiffs contend that All Saints expressly agreed to abide by the constitution and canons of the Rochester Diocese and is, therefore, subject to the trust doctrine of National Canons I.7.4 and I.7.5 (the Dennis Canons).[5] Under the Dennis Canons, a parish holds its property in trust for the Diocese and the National Church. Plaintiffs also

---

**5.** The Dennis Canons were adopted in 1979 by the General Convention of the National Church. They provide:

"Sec. 4 All real and personal property held by or for the benefit of any Parish, Mission or Congregation is held in trust for this Church and the Diocese thereof in which Parish, Mission or Con-

contend that Rochester Canon 8[6] reaffirms this doctrine, and that the Religious Corporations Law (*see* art 3, § 42-a; art 2, § 5[7]) further supports their contention that a religious corporation, incorporated pursuant to article 3 of the Religious Corporations Law, holds its property in trust for the Diocese and the National Church. Finally, plaintiffs argue that All Saints has remained an Episcopal parish for more than 20 years after adoption of the Dennis Canons without challenging their substance or applicability.

Defendants contend that a factual question exists as to whether an express or constructive trust was created or existed in favor of the Rochester Diocese and/or the National Church when they were expelled from the Rochester Diocese. Specifi-

---

gregation is located. The existence of this trust, however, shall in no way limit the power and authority of the Parish, Mission or Congregation otherwise existing over such property so long as the particular Parish, Mission or Congregation remains a part of, and subject to, this Church and its Constitution and Canons.

"Sec. 5 The several Dioceses may, at their election, further confirm the trust declared under the foregoing Section 4 by appropriate action, but no such action shall be necessary for the existence and validity of the trust."

6. Rochester Canon 8 provides:

"In conformity and consistent with the provisions of Title I, Canon 7, of the General Convention, it is hereby explicitly reaffirmed that all real and personal property held by or for the benefit of any Parish, Mission, Chapel, or Congregation located in the Diocese of Rochester is held in trust for the Episcopal Church and the Diocese of Rochester."

7. Section 42-a, enacted in 1991, states:

"Notwithstanding and in addition to the provisions of section five of this chapter, and subject always to the trust in which all real and personal property is held for the Protestant Episcopal Church and the Diocese thereof in which the parish, mission or congregation is located, the vestry or trustees of any incorporated Protestant Episcopal parish or church, the trustees of every incorporated governing body of the Protestant Episcopal Church and each diocese are authorized to administer the temporalities and property, real and personal, belonging to the corporation, for the support and maintenance of the corporation and, provided it is in accordance with the discipline, rules and usages of the Protestant Episcopal Church and with the provisions of law relating thereto, for the support and maintenance of other religious, charitable, benevolent or educational objects whether or not conducted by the corporation or in connection with it or with the Protestant Episcopal Church."

Under section 5, the trustees of a religious corporation "shall have the custody and control" of all church property and shall administer same in accordance with the rules of the corporation and ecclesiastical governing body.

cally, defendants argue that they cannot be bound by the Dennis Canons because they were adopted in 1979, nearly 30 years after All Saints was accepted as a parish. Also, defendants question whether the Dennis Canons or Rochester Canon 8 create an express trust, effectively divesting All Saints of its property, without violating the due process provisions of the United States and New York State Constitutions. Moreover, defendants argue that there is nothing in any deed or will or in the All Saints certificate of incorporation that establishes a trust over the All Saints property for the benefit of the Rochester Diocese or the National Church. Defendants' arguments are unavailing.

In *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.* (62 NY2d 110 [1984]) we adopted the neutral principles of law approach to church property disputes set forth by the United States Supreme Court in *Jones v Wolf* (443 US 595 [1979]).

> "Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. *At any time before the dispute erupts*, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, *the constitution of the general church can be made to recite an express trust in favor of the denominational church.* The burden involved in taking such steps will be minimal. *And the civil courts will be bound to give effect to the result indicated by the parties*, provided it is embodied in some legally cognizable form" (*Jones*, 443 US at 606 [emphasis added]).

The enactment of the Dennis Canons was apparently an attempt by the Episcopal Church to do exactly what this language suggested—to "ensure . . . that the faction loyal to the hierarchical church [would] retain the church property."

Application of the neutral principles doctrine requires the court to focus

> "on the language of the deeds, the terms of the local church charter, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property. The

court must determine from them whether there is any basis for a trust or similar restriction in favor of the general church, taking special care to scrutinize the documents in purely secular terms and not to rely on religious precepts in determining whether they indicate that the parties have intended to create a trust or restriction" (*First Presbyt. Church*, 62 NY2d at 122 [citation omitted]).

In *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville*, a case similar to this one, the Third Department noted that in many ways Dennis Canon I.7.4 was adopted in response to *Jones v Wolf*, which "held that the constitution of a hierarchical church can be crafted to recite an express trust in its favor concerning the ownership and control of local church property" (*Trinity*, 250 AD2d at 285, citing *Jones*, 443 US at 606). The Third Department affirmed the judgment granted in favor of the diocese, concluding—despite the existence of deeds indicating that the local parish held unrestricted title to three parcels of land surrounding the church—that the property was held in trust for the benefit of the diocese and hierarchical church.

Here, applying the neutral principles of law approach to the case at bar, we find that there is nothing in the deeds that establishes an express trust in favor of the Rochester Diocese or National Church. All Saints' certificate of incorporation, further, does not indicate that the church property is to be held in trust for the benefit of either the Rochester Diocese or the National Church. Nor does any provision of the Religious Corporations Law conclusively establish a trust in favor of the Rochester Diocese or National Church.[8]

The remaining factor for consideration under neutral principles, however, requires that we look to "the constitution of the general church concerning the ownership and control of church property" (62 NY2d at 122). It is this factor that we find dispositive. We conclude that the Dennis Canons clearly establish an express trust in favor of the Rochester Diocese and the National Church (*see Jones*, 443 US at 606), and that All Saints agreed to abide by this express trust either upon incorporation in 1927 or upon recognition as a parish in spiritual union with

8. However, since All Saints was incorporated under article 3 of the Religious Corporations Law, which only covers "PROTESTANT EPISCOPAL PARISHES OR CHURCHES," we can conclude that it was a part of the Episcopal Church and Rochester Diocese until it became extinct in 2005.

the Rochester Diocese in 1947. We therefore need not consider the existence of an implied trust. In agreeing to abide by all "canonical and legal enactments," it is unlikely that the parties intended that the local parish could reserve a veto over every future change in the canons. We find it significant, moreover, that All Saints never objected to the applicability or attempted to remove itself from the reach of the Dennis Canons in the more than 20 years since the National Church adopted the express trust provision (cf. First Presbyt. Church, 62 NY2d at 125).

■ In conclusion, plaintiffs have established that they are entitled to the real and personal property at issue and defendants have not raised any triable issue of fact to preclude this determination. We have considered defendants' remaining arguments in support of their declaratory judgment action and conclude that they lack merit. With regard to defendant's article 78 petition, we conclude as did the Appellate Division, that plaintiffs' resolution deeming the parish "extinct" was a nonreviewable ecclesiastical determination (see Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana, 9 NY3d 282 [2007]).

Accordingly, the Appellate Division orders should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Orders affirmed, with costs.